Good morning, Your Honors, and may it please the Court, I am Regine Ryan. For the petitioners, they're seated in the back row to my left. Thank you. I'd like to reserve two minutes for rebuttal, Your Honors. The overarching issue in this case is whether the substantial evidence compels the conclusion that no reasonable adjudicator would have denied asylum on this record. The lead petitioner is a married 57-year-old Georgian citizen. He claims the protected asylum ground a political opinion. That is his opposition to the Civil War with the separatist province of Abkhazia. His fear is that he would be prosecuted for military desertion if he were forced to return to the Republic of Georgia. There are two incidents based on his credible testimony and asylum application which compel the conclusion that asylum must be granted in this case. First, the petitioner testified that in 1993 during the conflict with the separatist province of Abkhazia that a Georgian military officer pointed an AK-47 at his chest which forced him to fly a military cargo plane in bad weather against his will. The petitioner served in the Georgian Army in the conflict. Wasn't the problem the weather and not the mission? Well, the record does show that the weather was a factor, Your Honor. I think what it may have done to make a reasonable inference on the record is that they reinforced his opposition to the war and made it clear in his own mind that he couldn't continue. But the problem, you've got to show it was in the persecutor's mind. I'm sorry, Your Honor. The problem is you have to show it's in the persecutor's mind, not in his mind. Well, yes, if it's imputed political opinion, of course. In his own mind, he has to have, of course, the subjective view. It's not his mind, it's the persecutor's mind.  So what was in the persecutor's mind? Well, what was in the persecutor's mind was that they wanted to force him to do something against his own will. He refused. But were they doing it because he was not a native Georgian? Is there any evidence of that? There isn't, Your Honor, in the record. That's what we look for. Well, I understand that, Your Honor. The point here is that by refusing, ultimately, to continue his service, abandoning his service without discharge, he is now subject to a military tribunal as a military deserter. So that ultimately is what we believe is before the court, is that he fears return to that country because of his opposition to that war. Could he be deported to Russia instead? It's a good question, Judge Fletcher. He was born in China, but it's not clear from the record that he could be accepted or that the Russian government would accept him at this time. So we don't think there's a third country issue in this case on the record. He's now of an age where he wouldn't be eligible to be a pilot anymore. Is that correct? That's correct, Your Honor. He aged out, if you will, at 55. He's now 57 years old. However, the fear still is there. The fact is, in his mind at least, he fears a prosecution before a military tribunal in Georgia, and that is something that is irrespective of his age. It's a difficult case because we've consistently held that prosecution for desertion isn't a basis for granting asylum. Yes, we understand that, Your Honor. And that is why we cited the Barranza-Rivera case, because in that case an inductee into the Salvadoran military was essentially told that he had to murder others or be murdered himself. And this Court found that there was a specific serious threat that may establish a well-founded fear of persecution. And that punishment was based on an objection to participation in human acts as a part of forced military service. And that was considered to be persecution under the meaning of the act. But is it in the record what the sentences are for prosecution for desertion? It is not, Your Honor. Well, we had a case recently, and I'm not remembering quite what the country was, but that when you would deport to that country, deserters had their limbs amputated. So that's a slightly different situation. One hopes that isn't the case in this instance, but we don't know. And the record is to whether there would be torture or unacceptable punishment. No. What we do have in the record, of course, is that a military officer pointed an AK-47 at his chest and said, You're going to fly this plane. And that, I think, is some indication of the type of procedures that are used in the military there. That's excessive force. The IJ found that was a clearly legal order. Objectively, it isn't. There's something in the record that his father applied for a visa for him and then it was withdrawn? Yes, Your Honor. There is. Unfortunately, he was quite elderly, and his stepmother intervened to have the petition withdrawn. But for that act, he could be a U.S. citizen today, as a matter of fact, but at least a green card holder. Your Honor, is there some time? Yes. May it please the Court. My name is Victor Lawrence, and I represent the Attorney General. This Court should deny this petition for review. Mr. Umanitz did not meet his burden of proof for asylum. He did not prove that he suffered past persecution, and he doesn't even challenge that. It's not an issue in this case.  or whether he was in a state of anxiety. or whether he suffers a fear, a well-founded fear, of persecution in the future on one of the five enumerated grounds. Here in this case, the board and the immigration judge correctly found that Mr. Umanitz feared prosecution for military desertion and not persecution based on one of the enumerated grounds. And this Court reviews the board's and the immigration judge's decision for substantial evidence. Thus, it shouldn't disturb the decision unless it feels that any reasonable fact finder would be compelled to conclude to the contrary. And we submit that under a substantial evidence standard or review, this Court should deny the petition and affirm the Board of Immigration Appeals. Now, given there doesn't seem to be any dispute that the one threat that he had to fly the cargo plane was anything that amounted to past persecution, the argument was never made. Indeed, at page 89 of the record, when the immigration judge asked his attorney at the time, are you going with past persecution or just well-founded fear of persecution, his lawyer responded that he was only going forward with a well-founded fear of persecution. So past persecution is not an issue here. But in any respect, as one of you pointed out, asking him to fly the plane in dangerous weather is not something that evoked any sense of anything protected under one of the enumerated grounds under the INA. Him saying, Mr. Umanitz saying that he didn't want to fly that plane was a matter of his own personal safety. It wasn't an issue of expressing political opinion. He never advised the Georgian Army what his political opinion was, if he indeed had one. And he's kind of suggesting that his persecution that might take place would be because of imputed political opinion. But he never said that. There's no evidence in the record that he ever said that he objected to this war between Georgia and Abkhazia on the basis of that he ever advised the Georgian Army that that was the case. He simply, all they know, all the Georgian Army knows, is that he went to the United States. And the Army may have known that his father was already in the United States. So there's no evidence in the record that he suggested that he was leaving for the United States because of his political opinion against this conflict. I take it you wouldn't oppose his going to Russia, if that was possible? You take it that we wouldn't? You would not oppose that? For him to be deported to Russia? Yeah. Well, I believe the immigration judge's opinion specifically said that he should be deported to Georgia. If that's the case, then we would submit that that would be the correct place of deportation. Well, that's what the IJ said. But I'm asking you, now representing him, why does it make particular sense? Why wouldn't Russia be a better place? Well, he doesn't identify with Georgia. Right. Well, I mean... What's wrong with making Russia an option? Well, I think the problem... I'm asking you as the government. I'm just the judge. You're the government. Right. Well, I understand. But I guess, you know, my purpose is to uphold the opinions below, and the opinions below just determine that he should be sent to Georgia, and we don't see any reason why that shouldn't be the case. It's kind of like if he said, you know, well, let's deport him to Spain. I can't give you an answer on that. I know Russia, there's a reason why you're saying Russia as opposed to Spain, but at the same time, you know, I believe the immigration judge's and the Board's decision was correct. The Board affirmed the immigration judge. The immigration judge determined that Georgia would be the place of deportation because he was a citizen of Georgia, a native of China, a citizen of Georgia, I believe is the background. Is he entitled to voluntary departure at this time? Excuse me. I'm not sure. I believe he is. The immigration judge indicated that he was granting the petition for the alternate application for voluntary departure. Right. So he didn't lose that. Yeah, he didn't lose that. So he's got voluntary departure. I think the question is, we understand what your role is, and you have to defend the decision. But I take it the government, if he elected as part of voluntary departure and wanted to go to Russia, you don't object to that, right? No. I think we understand your position. We're just saying are there additional reasons that you have that you would object to a voluntary departure to Russia as opposed to Georgia? I understand you're here to defend the IJ's opinion. Right. My only objection to that is that I just think it's procedurally not the role of the court to determine. I understand that. I'm just talking about do you have other reasons. No. That would be the principal reason, that under Ventura, it's either a remand or it's not the role of the court to decide in the first instance what the correct country of deportation is. No, but I don't think there was a determination. I mean, he was given the election of where he wanted to depart to, and whatever he said at the time is what Orr failed to say. And that's sort of the default, you go back to your country. So it wasn't exactly a finding on behalf of the IJ that you're defending here. Sure. Under no circumstances, I see your point. Yeah. But in any case, to distinguish from the Barraza, I'm sorry, the name of the opinion, Barraza-Rivera opinion, where Mr. Ryan indicated that, well, this is very much the same. It's really not. In Barraza-Rivera, the petition there was asked to perform acts that were condemned by the international community as contrary to the basic rules of human conduct. I believe he was asked to murder people on behalf of the army in Guatemala. That's not the case here. All Mr. Umunetz was asked to do was to fly cargo planes. He wasn't asked to participate in any inhuman acts. And to the extent that he felt that even that was an inhuman act because of what was going on in the conflict between Georgia and Al-Qaeda, he never expressed that. So as Judge Noonan pointed out, that you can't just assume that it was based on political opinion. He never expressed that. So none of the reasons, none of the exceptions apply. We don't know, Judge Fletcher pointed out, what would his punishment be in Georgia for persecution. There's no evidence in the record that his punishment would be any more severe than any other person who deserted the army. So he's not being singled out on any of the innumerable grounds. And what do we know about that in Georgia? I'm sorry? What do we know about that in Georgia? Well, we don't know anything from the record. But the point is the asylum applicant has to burn him a proof. It was his obligation to bring out any information that, well, but, A, the Georgian army didn't know that he was deserting on the basis of political opinion. They might have just thought he was visiting his father in the United States. So it was his obligation to bring out any facts to show that the Georgian army has a history, if it did, of particularly applying severe sentences to any individual who deserted on the basis of political opinion. No evidence in the record whatsoever. It was his burden to produce that evidence, if there is any. There just isn't. The record is silent as to that as far as my review of it. So, again, what we have here is we have one act, which nobody is alleging was past persecution. And even if you were to consider that argument, which was waived, we believe that that didn't amount to persecution on the protected ground. It was clearly Mr. Roumanet saying he didn't want to fly in bad weather. He wasn't saying I didn't want to go in there because I don't believe in this conflict between Georgia and Abkhazia. So past persecution is not there. He doesn't get the reasonable presumption of well-founded fear. And well-founded fear isn't there either. He might have had a fear of being prosecuted for military desertion, but under the INA his fear must be on account of one of the five enumerated grounds. It appears that he's trying to say that it was on account of political opinion, but there's no nexus here. There's no showing that the Georgian army ever even knew or could have implied that the reason why he was deserting was based on political opinion. People desert for any number of reasons. Political opinion might be one of them, but there's no evidence that they ever even came to that conclusion or had any reason to believe it. So we don't have past persecution. We don't have well-founded fear on the basis of a protected ground. Therefore, his application for asylum must fail. And given that this Court reviews this on the basis of substantial evidence, where unless any reasonable fact finder would be compelled to conclude to the contrary, there's certainly not that evidence here. Therefore, the government submits that the Court should properly deny his petition for review and affirm the Board of Immigration Appeals and the immigration judge. Thank you, counsel. Rebuttal. Thank you. First of all, I just want to address the issue that Judge Fletcher raised. Both petitioners have been granted voluntary departure. Say that again. Yes, both petitioners have been granted voluntary departure. Did they designate a country? I can't recall. Yes. Page 59 is the order, and page 70 of the opinion designates Georgia. So Russia isn't on the boards, if you will. It may be that yes. My question was, I realize that the IJ designated Georgia. I was wondering if they had requested any other country but Georgia or just let it go by default. Not to my knowledge, Your Honor. I don't believe there was any other country that was mentioned. And he may have a problem with Russia because it seems that Russia at some point supported Abkhazia during the Civil War. As far as the primary incident here, the AK-47 incident, we believe that his objection to flying was an expression of objection to the war. His abandonment of military service through his conduct was, again, an expression of his political opinion against the war. He did state in his application, the record at page 244, that his participation in the war meant he was fighting against his own people. That's at page 5 of the asylum application. So we believe that it could reasonably be inferred by the Georgia military that he did not want to continue fighting, and certainly his subjective intent is clear. The other incident goes to the telephone call that was received by his daughter in October 1996. And after the military found out that he was in the U.S., Mr. Ewen had stated that the military was very forceful in asking about when he was going to return to Georgia. Again, that's at page 244 of the record. This is after, again, the Georgia military called his daughter Natalia, who was in Georgia at the time. So those two incidents, and I might also say we have cited Haksa, the Ashcroft, as a similar situation where the Serbian government issued a summons to ethnic Albanians for an informal conversation, which this Court held added evidence to the asylum applicant's objective reasonableness of fear. So to sum up, we submit that the opposition to a war waged by one's own government is a clear expression of political opinion, and that opposition is even sharper when one consciously abandons military service without discharge during a war and subsequently leaves his own country. Thank you, Counsel. Thank you, Justice Thomas. I appreciate your clients being here, too. The case is here to be submitted. And we'll proceed to the next case on the calendar, which is Mappalad versus Ashcroft.
judges: B. Fletcher, Noonan, Thomas